In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-2130

LELAND O. STEVENS and LELAND O.
STEVENS, INCORPORATED,

*Plaintiffs-Appellants*,

*v.*

INTERACTIVE FINANCIAL ADVISORS,
INCORPORATED and REDTAIL
TECHNOLOGY, INCORPORATED,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11 C 2223 — **Matthew F. Kennelly**, *Judge.*

ARGUED JUNE 1, 2016 — DECIDED JULY 29, 2016

Before WOOD, *Chief Judge,* and BAUER and FLAUM, *Circuit
Judges.*

BAUER, *Circuit Judge.* Plaintiff-appellant, Leland O. Stevens
("Stevens"), is a self-employed financial advisor. He claims that
defendants-appellees, Independent Financial Advisors, Inc.
("IFA") and Redtail Technologies, Inc. ("Redtail") (collectively,

"the defendants"), stole his clients' nonpublic personal information. Believing that he had a property right to this private information, Stevens sued the defendants for conversion and other claims on behalf of himself and his eponymous corporation. The district court granted summary judgment for the defendants on some of Stevens' claims, and a jury found for the defendants on the remaining claims. Stevens now appeals the district court's grant of summary judgment, as well as a supplemental jury instruction that the district court gave during trial. We affirm both of the district court's actions.

## I. BACKGROUND

After twenty years as an insurance salesman, Stevens wanted to sell investment products. Because neither he nor his company was registered with the Securities and Exchange Commission, Stevens needed to associate himself with a registered investment advisor to sell securities under federal law. *See* 15 U.S.C. § 80b-3(a); 17 C.F.R. § 200.2(e). He did so in 2003, when he associated with IFA, a loosely confederated investment advisory firm. The two parties first entered into an oral agreement whereby Stevens became an individual advisory representative for IFA. The parties eventually memorialized the agreement in a June 2009 written contract. As an independent advisory representative, Stevens could provide investment advice and sell securities under the umbrella of IFA; anyone who purchased securities from Stevens was considered a client of both Stevens and IFA. Though Stevens alone procured the clients, he and IFA shared the fees.

In exchange for sharing clientele and fees with IFA, Stevens had access to IFA's market resources and other proprietary information. This included access to a centralized cloud-based data system, which Redtail operated under IFA's direction. Stevens uploaded client information into this database, including sensitive nonpublic information like names, addresses, and social security numbers. Besides uploading information from clients who purchased investment products from him, Stevens also uploaded information from clients who purchased only insurance products. Because these clients did not purchase securities, they were not IFA clients. IFA did not know that Stevens had entered the non-IFA client information into the database.

In October 2009, IFA learned that Stevens had become involved in a Ponzi scheme. IFA severed its association with Stevens and ordered Redtail to block Stevens from accessing the database. It also transferred Stevens' securities-purchasing clients to other independent advisory representatives. Stevens claimed that by blocking access to the nonpublic personal information of his clients, IFA effectively stole his property. He sued the defendants for conversion, violation of the Illinois Trade Secrets Act, tortious interference with business expectancy, and injunctive relief. Because there is complete diversity and because the amount in controversy exceeds $75,000, Stevens properly brought these state law claims in federal court. *See* 28 U.S.C. §§ 1332(a)(1), 1332(c)(1). He filed suit in the Western District of Virginia, and the case was later transferred to the Northern District of Illinois. All parties agree that Illinois' substantive law governs. *See McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 680 (7th Cir. 2014).

In time, the defendants moved for summary judgment. The district court granted the defendants' motion on the claims relating to the information of clients who had purchased securities from Stevens. The district court noted that federal securities law prevented a financial institution like IFA from disclosing the nonpublic information of its clients to a non-affiliated third party like Stevens. *See* 15 U.S.C. § 6801; 17 C.F.R. § 248.10. This prevented Stevens from having an absolute, unconditional right to immediate possession of the property, as required to sustain a conversion claim under Illinois law. *See In re Karavidas*, 999 N.E.2d 296, 310 (Ill. 2013) (quotation marks and citations omitted). Unable to fulfill this element of a conversion claim, the district court held that the entire claim failed as a matter of law.

The district court did not grant summary judgment for the conversion claim related to the information of the non-IFA clients (those who purchased only insurance from Stevens). The same restrictions governing the sale of securities do not govern the sale of insurance, and relevant state law does not proscribe IFA from sharing that information with Stevens. Those claims instead went to trial. During its deliberations, the jury sent the district court a question in writing, "Can we consider [filing] the lawsuit a demand for property?" The district court stated that filing a lawsuit does not constitute a demand for the purposes of a conversion claim under Illinois law. The jury then returned a verdict in favor of the defendants.

Stevens appealed.

## II. DISCUSSION

Stevens' arguments on appeal only relate to his conversion claims. To prove conversion under Illinois law, a plaintiff must show that: (1) he has a right to the property at issue; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property. *In re Karavidas*, 999 N.E.2d at 310 (quotation marks and citations omitted). Stevens presents two arguments on appeal. First, he argues that the district court erred by holding that he could not prove that he had an absolute and unconditional right to the immediate possession of the nonpublic information of the IFA clients. Thus, granting summary judgment on the conversion claim relating to IFA clients was erroneous. Second, he argues that filing a lawsuit satisfies the demand element of the conversion claim, and that the district court erred by instructing the jury differently.

We disagree with both of Stevens' arguments. First, the district court properly understood relevant federal securities law and correctly applied this law to Stevens' conversion claim regarding the IFA clients. Second, Stevens forfeited his argument regarding the district court's answer to the jury question because he did not object to the district court's response at trial. Regardless, the district court committed no error; it properly described what constitutes—or, more precisely, what *does not* constitute—a demand under Illinois conversion law.

**A.  Summary Judgment For Claims Related to IFA Clients**

Once IFA terminated its relationship with Stevens in 2009, it could not provide him with the nonpublic information of the IFA clients under federal law. As a result, Stevens did not have an absolute and immediate right to immediate possession of the information. *See Horbach v. Kaczmarek*, 288 F.3d 969, 978 (7th Cir. 2002) (citations omitted) (under Illinois law, "[t]he essence of conversion is the wrongful deprivation of one who has a right to immediate possession of an object unlawfully held" (quotation marks omitted)). He could not sustain a conversion claim as a matter of law, so summary judgment for the defendants was appropriate.

We review the grant of summary judgment *de novo*, construing the facts in the light most favorable to the non-moving party—here, Stevens. *E.g.*, *Roberts v. Columbia Coll. Chicago*, 821 F.3d 855, 861 (7th Cir. 2016) (citation omitted). Summary judgment is appropriate and the moving party is entitled to judgment as a matter of law where "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a); *accord. Hummel v. St. Joseph Cty. Bd. of Comm'rs*, 817 F.3d 1010, 1015–16 (7th Cir. 2016). Here, summary judgment for the defendants on the claims related to the IFA clients was appropriate because Stevens points to no evidence or law that allows a circumvention of federal securities law.

The Gramm-Leach-Bliley Act famously repealed the Depression-era Glass-Steagall Act's "ban on affiliations between commercial and investment banks." *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 29 (2007) (calling Gramm-Leach-Bliley a "seminal piece of banking legislation" for this

reason); *see* Pub. L. No. 106-102, § 101, 113 Stat. 1338 (1999). Gramm-Leach-Bliley also enacted multiple safeguards to protect the privacy of customers of financial institutions. Regarding nonpublic personal information specifically, the statute notes: "It is the policy of the Congress that each financial institution has an affirmative and continuing obligation … to protect the security and confidentiality of its customers' nonpublic personal information." 15 U.S.C. § 6801(a). The Act also vested relevant agencies with the ability to "establish appropriate standards for the financial institutions" in order to further this policy of protecting consumer information. 15 U.S.C. § 6801(b). Specifically, the Securities and Exchange Commission has the authority to regulate investment advisors like IFA. *See* 15 U.S.C. § 6805(a)(5); *see also* 15 U.S.C. § 80b-4a.

Pursuant to its statutory authority, the SEC promulgated Regulation S-P, which forbids investment advisors from "directly or through any affiliate, disclos[ing] any nonpublic personal information about a consumer to a nonaffiliated third party." 17 C.F.R. § 248.10(a). The regulation states that "[a]n individual is [the advisor's] *consumer* if he or she provides nonpublic personal information to [the advisor] in connection with obtaining or seeking to obtain brokerage services or investment advisory services." 17 C.F.R. 248.3(g)(2)(i) (emphasis added). It defines a "nonaffiliated third party" as "any person" except an investment advisor's affiliate or a joint employee of both the investment advisor and a company that is not the investment advisor's affiliate. 15 C.F.R. § 248.3(s)(1). Finally, an "affiliate" is "any company that controls, is controlled by, or is under common control with the … investment advis[o]r." 15 C.F.R. § 248.3(a). The SEC has been vigorous in

its enforcement of Regulation S-P, punishing advisors who have disclosed client information to nonaffiliated third parties. *See, e.g.*, *Santos*, S.E.C. Release No. 4346, 2016 WL 786444 at *2 (Feb. 29, 2016); *Gisclair*, S.E.C. Release No. 3703, 2013 WL 5740459 at *6–8 (Oct. 23, 2013).

Here, IFA could not have provided Stevens with the nonpublic personal information of the IFA clients that he procured. First, the clients in this case are consumers under the regulation; the heart of the controversy is the nonpublic personal information that they provided when seeking financial advice. *See* 17 C.F.R. 248.3(g)(2)(i). Second, and more importantly, Stevens ceased being an affiliate of IFA when the relationship between the two parties ended. With the relationship terminated, Stevens was no longer controlled by or under common control with IFA, the investment advisor. Nor was he a joint employee of IFA and a nonaffiliated third party. He was instead an unaffiliated third party for the purposes of Regulation S-P, and IFA could not disclose to him any nonpublic personal information of the clients on the database. Nor could Redtail, an affiliate of IFA controlled by IFA, give Stevens this information.

Stevens argues that because he procured the clients and uploaded the information at issue, he has an ownership claim to the information superseding IFA's claim to the information and the mandate of Regulation S-P. But ownership is not relevant to analysis under Regulation S-P. *See In re S.W. Bach & Co.*, 435 B.R. 866, 891 (Bankr. S.D.N.Y. 2010) (citing *NEXT Fin. Grp., Inc.*, S.E.C. Release No. 349, 2008 WL 2444775 at *26 (ALJ June 18, 2008)) (noting that Regulation S-P applies "[r]egardless

of who 'owns' the customer information"). The statutory duty to protect a customer's nonpublic information under both Gramm-Leach-Bliley and Regulation S-P falls squarely "'on the covered financial institution, not the individual representative.'" *Id.* (quoting *NEXT*, 2008 WL 2444775 at *26); *see* 15 U.S.C. § 6801(a); 17 C.F.R. § 248.10(a). An investment advisor's duty under the regulation quashes any ownership claim; it was incumbent on IFA to not disclose its clients' information to nonaffiliated third parties, even if the unaffiliated third party initially generated the clients.

Regulation S-P carves out a single exception to the duty of non-disclosure to a nonaffiliated third party: an investment advisor like IFA could follow a specifically enumerated opt-out procedure. *See* 15 U.S.C. §§ 6802(b); 17 C.F.R. § 248.10(a)(1). But this exception does not apply here, because IFA explicitly eschews this opt-out procedure. In its compliance policy manual, IFA states that it "does not need to provide the right for its clients to opt out of sharing with nonaffiliated third parties."[1] Its non-disclosure duty was clear and unavoidable: it could not reveal the nonpublic information to Stevens when he was no longer affiliated with the firm.

---

[1] IFA exempts certain third parties from this rule: service providers, such as "attorneys, auditors, consultants, brokers, custodians, and other consultants"; those parties who help process and service transactions; and those parties who are required or allowed to receive the information by law, such as parties connected to an audit or subpoena. Stevens, a terminated former investment advisory representative, falls into none of these three exempted categories.

As the district court noted, Stevens may indeed have "some right" to the client information. But any such right does not override the requirements of Regulation S-P. The regulation prevents him from taking immediate possession of the client information. As a result, Stevens cannot prove an element of his conversion claim as a matter of law. Summary judgment for the defendants on the conversion claim relating to IFA clients was proper.

### B.  Jury Instruction in Trial For Claims Related to Non-IFA Clients

Stevens also argues that the district court misstated Illinois law when it told the jury that filing a conversion lawsuit does not constitute a demand for property. We regard a court's response to a question from the jury regarding the law as a supplemental jury instruction, and generally review such instructions for abuse of discretion. *See United States v. Carani*, 492 F.3d 867, 874 (7th Cir. 2007) (citations omitted). But we have no evidence that Stevens objected to the court's response, or that any exceptional circumstances prevented him from objecting. Thus, his argument is forfeited. *See* Fed. R. Civ. P. 51(d); *Perry v. City of Chicago*, 733 F.3d 248, 253 (7th Cir. 2013) (citations omitted) (absent showing of exceptional circumstances, an effect on a party's substantial rights, and a resulting miscarriage of justice, appellate review not available in civil cases if party does not object at trial).

Even if Stevens had objected, the district court did not abuse its discretion in its instruction to the jury. When reviewing a court's response to a jury question, we determine whether the response: (1) fairly and adequately addressed the

issues; (2) correctly stated the law; and (3) answered the jury's question specifically. *Morgan v. City of Chicago*, 822 F.3d 317, 342 (7th Cir. 2016) (quotation marks and citation omitted). Here, the district court more than adequately addressed the narrow issue and directly answered the jury's single question. The salient question on appeal is whether it correctly stated relevant Illinois law. We hold that it did.

The Illinois Supreme Court has never explicitly established the rule that filing a lawsuit does not constitute a demand, so a federal court sitting in diversity jurisdiction must "use [its] own best judgment to estimate how the Illinois Supreme Court would rule as to its law." *Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016) (brackets, quotation marks, and citation omitted). In making this estimation, federal courts should "give great weight to the holdings of the state's intermediate appellate courts[,] and ought to deviate from those holdings only when there are persuasive indications that the highest court of the state would decide the case differently." *Id.* at 1087–88 (quoting *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 637 (7th Cir. 2002)); *see also Fid. Union Trust Co. v. Field*, 311 U.S. 169, 177–78 (1940) ("An intermediate state court in declaring and applying the state law is acting as an organ of the [s]tate[,] and its determination, in the absence of more convincing evidence of what the state law is, should be followed by a federal court in deciding a state question.").

Here, there is no persuasive indication that the Illinois Supreme Court would rule that filing a lawsuit was sufficient to meet the demand element of a conversion claim. Stevens has not identified any Illinois appellate case holding as much. In fact, Illinois appellate courts have held to the contrary—that a

pre-lawsuit demand is necessary to sustain a conversion claim—and the Illinois Supreme Court has not overruled these decisions. *See Rybak v. Dressler*, 532 N.E.2d 1375, 1387 (Ill. App. Ct. 1988), *reh'g denied*, 541 N.E.2d 1115 (Ill. 1989); *A.T. Kearney, Inc. v. INCA Int'l, Inc.*, 477 N.E.2d 1326, 1334 (Ill. App. Ct. 1985); *Hoffman v. Allstate Ins. Co.*, 407 N.E.2d 156, 158 (Ill. App. Ct. 1980). We too have held that making a demand prior to filing a lawsuit is necessary to sustain a conversion claim under Illinois law. *See Runnemede Owners, Inc. v. Crest Mortg. Corp.*, 861 F.2d 1053, 1060 (7th Cir. 1988). We noted in *Runnemede* that the "primary purpose" of the requirement is to facilitate the return of the desired property to the plaintiff "before being required to submit to unnecessary litigation." *Id.*

In support of his position, Stevens only cites a single unreported federal district court opinion, which in turn cites a single Seventh Circuit case. *See MacNeil Auto. Prod., Ltd. v. Cannon Auto. Ltd.*, 2010 WL 4823592, at *1 (N.D. Ill. Nov. 19, 2010), *citing LaParr v. City of Rockford*, 100 F.2d 564, 565–66 (7th Cir. 1938). *MacNeil*'s reliance on *LaParr* was misplaced: *LaParr*'s discussion of a "demand" relates to a controversy regarding the appropriate reference point for interest accrual, *not* regarding what satisfies the demand element of a conversion claim. *See LaParr*, 100 F.2d at 568–69. *LaParr* references no Illinois case that discusses the appropriate timing for a demand for property in a conversion claim, and certainly does not stand for the proposition that filing a lawsuit fulfills the demand element of a conversion claim under Illinois law. A single tangential Seventh Circuit case cited in an unpublished federal district court opinion is hardly "convincing evidence" of what Illinois law would be regarding the demand element

of a conversion claim. *See Field*, 311 U.S. at 178. The district court's answer to the jury's question was correct, and not an abuse of discretion.[2]

A final issue: Stevens argues on appeal that he was excused from making a demand. Under Illinois law, a demand for property is not necessary where the demand would be futile or if the defendant has sold, disposed of, or fundamentally changed property at issue. *See, e.g.*, *Stathis v. Geldermann, Inc.*, 630 N.E.2d 926, 931 (Ill. App. Ct. 1994); *A.T. Kearney, Inc.*, 477 N.E.2d at 1334 (citation omitted). Stevens claims that the district court did not address this issue of law. But the district court did address the issue, including this language in its jury instructions. It did not misstate the law as Stevens argues.

## III.  CONCLUSION

We AFFIRM the actions of the district court and the jury's verdict.

---

[2] Logic buttresses our determination. If filing a lawsuit constituted a demand for property, then a demand for property would be an unnecessary element of a conversion claim. Filing a suit would always satisfy this element; there would be no need for a discrete demand element.