Harvey W. Van Geem, Plaintiff-Appellee, v. Skokie Trust and Savings Bank, a Banking Corporation, Defendant-Appellant.

Gen. No. 48,789.

First District, Third Division.
April 17, 1963.
Rehearing denied May 9, 1963.

78

Henry L. Wells, of Chicago (John M. Bryant and George P. Latchford, of counsel), for appellant.

Leonard Bosgraf, of Chicago, for appellee.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

This is an appeal from a judgment for $1568 in favor of plaintiff as the holder of a check on which, after certification by defendant bank, payment was refused. The bank defends on the ground that the check was certified through a mistake and fraud committed by plaintiff in a scheme to put himself in the position of the holder of a certified check. The bank contends that such defenses may be properly made because the rights of no third party have intervened. What plaintiff did was unique and devious and to understand it requires a detailed account of the facts.

The controversy grows out of a dispute between plaintiff and his brother Earl. Plaintiff was the president of Community Restaurants, Inc., hereinafter called "Restaurants Company." His brother owned the stock of the company. The business did not thrive and in November 1960 it was in serious financial difficulty. As a matter of fact, it was in such distress that, according to the company's accountant, at the time of the transaction here involved it did not have enough money to meet the day's payroll. On about November 15, plaintiff notified his brother that he was going to resign as president. Earl agreed and on Friday, Novem-

ber 25, 1960 plaintiff gave his brother his written resignation. On that day plaintiff made up some of the payroll checks. On that or the following day he wrote a check to himself for $150 *out of the current checkbook then in use,* that being the amount he had been drawing weekly. He put it this way: "This was all the money due me at the time *on the payroll."* (Italics ours.)

A dispute developed between the brothers over plaintiff's claim that he was entitled to an additional sum of $1568 as part of a guaranteed salary. Earl denied this, claiming he had promised plaintiff a bonus only if the business prospered. Plaintiff submitted a note for $1568 for Earl to sign, which Earl refused to do, and on the following day, November 26, 1960, plaintiff drew a check to himself for $1568 on Restaurants Company's account. He did not take the check *in regular order out of the checkbook then being used,* but took a check out of sequence and did not include it on a check register kept by the company which showed its current balances. The reason was, as plaintiff put it, that he was trying to get the money due him and did not want his brother to know he had drawn the check. Plaintiff also testified that an accountant was working on the books and that he did not want to interrupt him—hardly a valid excuse considering that the writing of a check requires but a moment.

After signing the check as president of Restaurants Company, plaintiff did not take it to the bank to be certified nor did he deposit it to his own account, but deposited it to the credit of Consolidated Employee Index Inc., hereinafter called "Consolidated," in an account which that company also had with defendant bank. Plaintiff was president of Consolidated, but Earl had no interest in the company. Plaintiff used Consolidated only as a step in his plan. He offers no explanation as to why he did not deposit the check in

his personal account at the Evanston Bank & Trust Company, where finally he did deposit the certified check here in question. He knew there was not sufficient money in Restaurants Company's account to cover the check at the time he drew it and knew that his brother (with no idea that plaintiff would draw the check for $1568) was trying to get a loan of $1,000 to bolster up the company's finances. Plaintiff also knew there was outstanding a $1400 check payable to the Internal Revenue Service and that such checks often are delayed for presentation. The only explanation for his devious activity is that he hoped the defendant bank would certify the check in question without waiting to see whether Restaurants Company's check had cleared.

The balance in Restaurants Company's account at the close of business November 25, 1960 was $172.13, and on November 28, it was $654.93. The balance to the credit of Consolidated on November 25 was $210.12; on the 28th, $224.82; on the 29th, $345.75, and on December 1st it was $344.72. It is thus clear that without Restaurants Company's check for $1568 there were not sufficient funds in Consolidated's account to cover the check involved and it is equally clear that except for plaintiff's speculative forecast that the amount might be covered by subsequent deposits, there were not sufficient funds in Restaurants Company's account to clear that check. Nevertheless, on Monday, November 28th, plaintiff drew a check on Consolidated's account at defendant bank in favor of his father-in-law August Schubert for $1568. On Tuesday, the 29th, at 9:30 a. m. he called the bookkeeping department of defendant bank and explained that on Saturday he had deposited a check for $1568 to the Consolidated account, drawn on Restaurants Company's account at the bank. He testified: "I asked the girl to check the account to see if the check [here in question] could be certified.

81

After she left the phone, she returned and stated the funds were available and I could certify the check." Plaintiff then went to defendant bank and presented the check to the teller for certification. The teller made a call to the bookkeeping department, as plaintiff presumed, and "after a conversation for about three or four minutes, he said that Mr. Plaziak [an officer of the bank] wanted to know what the deposit was placed on Consolidated Employees Index," and plaintiff explained it was a *payroll check* drawn on Restaurants Company; that the teller was on the phone three or four minutes more and that the check was then certified and given back to plaintiff, who had Schubert endorse it. Plaintiff then deposited it to his own account in the Evanston Bank & Trust Company. When the defendant bank later learned the facts, it withdrew the certification and refused payment on the check.

It is clear that the basis for certification was plaintiff's statement that he had made a deposit of the $1568 Restaurants Company check to Consolidated's account. He did not advise the bank that he was no longer president of Restaurants Company; that there was a dispute with his brother involving the payment of the $1568 which he claimed was owing to him; that at the time the check was issued there were not adequate funds in Restaurants Company's account to meet it; that Restaurants Company was in desperate financial shape, and that his brother was trying to borrow money to meet the payment of other checks which had been drawn. These are facts not in dispute.

Plaintiff's resignation was dated November 25, 1960. It read as follows:

> "I hereby resign as president and director of Community Restaurants, Inc."

and was delivered to Earl Van Geem on that day. Resolutions certifying new officers authorized to sign

82

checks were not adopted until a meeting of the board of directors on November 26, 1960. The resignation appears to have been intended to have immediate effect. The brothers were to meet on November 26 to close out details, and it also appears that plaintiff signed the regular payroll checks on that day. It does not appear anywhere, however, that he had authority, notwithstanding his resignation, to pay himself $1568 without saying anything about it to his brother. The resolutions were placed in the bank's night depository on Monday, November 28, and in due course would be received some time Tuesday. It is to be noted it was an early hour for banking, 9:30 a. m., when plaintiff telephoned the bank, and about 10:00 a. m. when he presented himself to consummate his plan. The resolutions had evidently not yet made the rounds.

Plaintiff sues as holder of the check. The fact that it was originally made payable to August Schubert, his father-in-law, is entirely cancelled out by the fact that plaintiff took the check back from Schubert and deposited it to his own personal account in another bank. The Schubert conduit was a link in a chain of events by which plaintiff thought he would be able to carry out his plan, and it need not be further considered. No point is made of it in defendant's brief in this court.

When plaintiff called the bank to inquire about certification, he said he had deposited a check for $1568 to the Consolidated account, but failed to disclose the truth with respect to that check, and taking into account the fact that he had been president of Restaurants Company and was still so known to the bank, this constituted a clear representation that it was a good check and would be paid. Plaintiff knew as much about the actual condition of Restaurants Company's account as the bank did, and with respect to that check and its doubtful validity, he knew more.

■ ■ Certification of a check by mistake or by fraud may be revoked and annulled, provided no change of circumstances has occurred which would render it inequitable for such right to be exercised. Daniel on Negotiable Instruments, 7th ed, vol 3, § 1799, p 1843; Dillaway v. Northwestern Nat. Bank of Chicago, 82 Ill App 71. Any person having notice of the fact that a bank had not enough of the drawer's funds on hand to meet the check at the time of certification, will be presumed to know that the act was unauthorized and void, and will not be allowed to hold the bank liable upon it. 1 Morse on Banking, 3rd ed, § 155, p 344; National Plumbing & Heating Supply Co. v. First Nat. Bank of Chicago, 260 Ill App 431; Dillaway v. Northwestern Nat. Bank of Chicago, 82 Ill App 71; First Nat. Bank of Chicago v. Molesky, 15 Ill App2d 470, 146 NE2d 707.

■ Plaintiff cites Section 186 of the Negotiable Instruments Act (Ill Rev Stats, c 98, § 208 (1961)) which provides as follows:

> "Where a check is certified by the bank on which it is drawn, the certification is equivalent to an acceptance."

He cites no authority, however, which in any way changes the rule with respect to mistake or fraud. He relies heavily on Pouzar v. Old Colony Trust & Sav. Bank, 197 Ill App 456–58. There the defendant bank certified a check given to the plaintiff, a merchant, in the course of a regular business transaction. The check was a forgery. There was no question whatever of the complete innocence of the merchant. The court held that when the bank certified the check, it in effect certified the signature. The Pouzar case would be comparable to the one at bar if it were the forger who had sought payment of the check instead of a merchant who had given value for the check.

84

■ Counsel for plaintiff has taken an ingenious view with respect to one aspect of the instant case. He argues that this was a dispute between brothers—that it was perfectly proper for plaintiff to do what he did in order to satisfy what he claimed was owing him by Restaurants Company, and that what the bank did when it withdrew certification of the check was to become an interloper in a private fight. Whether the bank was *under obligation* to withdraw the certification when the facts were brought to its attention is not an issue in this case. There is basis, however, for the conclusion that it might become so obligated, and this was sufficient under the circumstances here to warrant its withdrawing certification and refusing payment. It was no interloper. The fact that the bank had been indemnified by a bond given by Earl Van Geem and Restaurants Company is an irrelevant and extraneous circumstance which does not alter either the facts or the law.

■■ Plaintiff argues that the Consolidated account was in fact credited with Restaurants Company's check and that where a bank receives and credits a check to an account, it cannot charge it back without the consent of the depositor. It is our opinion that the fraud committed by plaintiff vitiates the transaction, the rights of no third party having intervened.

In none of the cases cited by plaintiff are the facts at all similar to the case at bar.

Judgment reversed.

DEMPSEY, P. J. and McCORMICK, J., concur.