A. T. KEARNEY, INC., Plaintiff-Appellee, v. INCA INTERNATIONAL, INC., *et al.*, Defendants-Appellants.

First District (4th Division)   No. 83—2308

Opinion filed April 11, 1985.—Rehearing denied May 16, 1985.

Terence E. Flynn and Thomas J. Fleischmann, both of Rooks, Pitts, Fullagar & Poust, of Chicago, for appellant George Kackert.

William Van Hagey and William T. McGrath, both of Chadwell & Kayser, Ltd., of Chicago, for appellee.

JUSTICE LINN delivered the opinion of the court:

Plaintiff, management consulting firm, hired defendant, interior design company, to coordinate the design of its new offices, relying on defendant's project manager to secure bids for the architectural woodworking involved therein. The project manager presented plaintiff with a single bid, that of a corporation that, unbeknownst to plaintiff, the project manager and two of his associates had incorporated several weeks earlier.

Relying on the project manager's advice, plaintiff accepted the bid presented and paid to the newly formed corporation an earnest-money deposit of $175,000 to commence work. Immediately upon receipt of plaintiff's deposit, one of the incorporators of the woodworking corporation opened an account in the corporate name and used the deposit money to repay a personal loan of $100,000, made to him prior to incorporation by an associate with knowledge of the corporation's financial dealings and the source of repayment.

The trial court found the incorporators and the creditor/payee of the $100,000 personal loan guilty of conversion and held them jointly and severally liable under a theory of constructive trust for the entire amount of plaintiff's loss. The creditor/payee appealed.

We affirm in part, reverse in part, and modify.

FACTS

Plaintiff, A.T. Kearney, Inc. (Kearney), a management consulting firm, hired defendant[1], Interior Dynamics, Ltd. (IDL), to coordinate the relocation of its new offices, to be completed by September 1980. IDL, through its project manager/executive vice-president Bharat Kothari, was to obtain bids for the furnishings and architectural woodworking involved in the project. In its contract with Kearney, IDL promised to secure "competitive bids" from "reputable contractors known by [IDL]." Kearney relied completely on Kothari to secure the bids and to investigate and deal with the various vendors.

Despite IDL's promise to secure competitive bids from reputable contractors, Kothari submitted to Kearney on May 5, 1980, only a single bid, one from INCA International, Inc. (INCA), a corporation which, unbeknownst to plaintiff, had been incorporated only three weeks earlier by Kothari and two of his close business associates. Kothari advised Kearney to accept INCA's bid and informed Kearney that the normal practice and custom in the trade was to remit 50% of the total contract price as an earnest money deposit. Relying on Kothari's advice, Kearney accepted INCA's bid and delivered to Kothari a check payable to INCA in the amount of $175,000, unapprised by Kothari of his relationship to INCA, of INCA's three-week old status, and of various other facts that called into question Kothari's role as fiduciary and INCA's reputability and ability to perform under the contract.

Kothari delivered the Kearney $175,000 job deposit to INCA on May 12, 1980. On May 13, 1980, Joseph Popp, another of INCA's incorporators and an officer thereof, called defendant, George Kackert, an associate of his in the construction and real estate development business and Popp's personal creditor, and informed Kackert that he had received the money for INCA, that he planned to open an account at Glenview State Bank, and that he would meet Kackert at the bank to repay the $100,000 personal loan Kackert had made to him several months earlier.

---

[1]Defendants IDL, INCA, John J. Popp, Thomas Jolitz and Bharat Kothari are not parties to the instant appeal. The sole appellant is George Kackert.

Kackert, the appellant here, initially became involved with Popp in March 1980, when Popp turned to him for financial assistance to facilitate the acquisition of Aztec, a woodcrafting plant in Nebraska that Popp and Thomas Jolitz, another INCA incorporator, were trying to purchase out of bankruptcy to perform the actual woodworking on the Kearney project. Kackert met with Popp, Jolitz, and Kothari on numerous occasions to discuss the concept of INCA, which was to serve as a holding company for the recently bankrupt Aztec to alleviate any difficulties Aztec might have in obtaining performance bonds. Popp told Kackert that Kothari was involved in the program to design work, to bring in investors and to bring business into the project. Kackert had several phone conversations with Kothari, met with him and the other INCA incorporators at Kothari's office, and traveled with them to construction conventions in Atlantic City and New York City, where they discussed plans for INCA-Aztec. Kackert flew to Nebraska with Popp and Jolitz to inspect the Aztec facilities and signed documents in the capacity as treasurer of Aztec.

A pre-incorporation agreement for INCA was signed by Kackert, Popp, and Jolitz on or about March 28, 1980. Later that same day, Kackert had occasion to go to the bank to check on a loan application that Popp and Jolitz were supposedly making to get funds pursuant to the agreement to put the INCA-Aztec project together. When Kackert got to the bank, he learned that neither Popp nor Jolitz had attempted to obtain the agreed-on line of credit. Kackert called Popp and informed him that he wanted to withdraw from the deal because he was "not comfortable with it," it was "far too voluminous; there were too many loose ends," and "no documentation *** the performances they were requested to do in every area, for myself, and ultimately in the end, the last straw was the bank ***."

Popp informed Kackert of the difficult financial position in which Kackert's sudden withdrawal left the project and asked Kackert to make a personal loan of $100,000 to Jolitz, who had already begun to pay bills incurred by INCA-Aztec. Kackert refused to lend the money to Jolitz because he questioned his reputability, but he agreed to make a personal loan to Popp, who secured the loan with assignments of beneficial interests in real estate he owned personally.

After Kackert withdrew from the INCA deal, around March 29, Popp and Jolitz brought in Kothari as the third INCA incorporator. INCA was officially incorporated on April 15, 1980, some three weeks before INCA's bid on the Kearney project was accepted.

As of the beginning of May, Popp had neither repaid Kackert for

the personal loan nor paid the bank on the $270,000 loan that was secured in part by Kackert's interest in a certificate of deposit. On May 3, Kackert learned that the bank had cashed the certificate of deposit in order to satisfy Popp's overdue loan. From that date forward, Kackert, who had cause to believe that "there was nothing there as far as assets for INCA were concerned," aggressively pursued Popp for repayment of the personal loan. To reassure Kackert of payment, Popp informed him that INCA would soon be receiving a substantial deposit, and Kackert was aware of the expected job deposit due INCA from the Kearney deal.

On May 13, Popp called Kackert and told him he had received the earnest money from Kearney. He arranged to meet Kackert at the bank, where he opened an account in INCA's name. Repayment to Kackert of Popp's personal loan was made in the form of an INCA International check drawn on the INCA account. At the time he accepted the INCA check, Kackert was aware that he had loaned the money to Popp personally, that he had never loaned money to INCA, and that INCA owed him no money. Approximately one week after Kackert received the INCA check, Kothari telephoned Kackert to request a personal loan of $25,000. Kackert testified that the proximity of this loan request and repayment from Popp was strictly fortuitous.

Plans for the Kearney project went forward until late June 1980, when Kothari received a Mailgram from the president of Aztec, informing him that due to lack of sufficient operating capital, Aztec had been forced to close its facilities and terminate all its employees. Upon receiving this information, Kearney instructed Kothari to get back the $175,000 earnest money deposit it had paid to INCA. On August 1, Kothari made written demand on INCA for refund of Kearney's job deposit. No demand was ever made on Kackert personally. After demands made to INCA proved fruitless, Kearney instituted the instant action.

Kearney brought a nine count complaint against defendants IDL, Kothari, INCA, Jolitz, Popp and Kackert. The complaint alleged constructive trust, common law fraud, conversion, deceptive trade practices, breach of contract and conspiracy. At trial, defendants IDL and Jolitz, who had filed for protection under the bankruptcy laws, interposed the automatic stay. INCA defaulted, and the trial proceeded against Kothari, Popp and Kackert. The trial judge found the defendants jointly and severally liable on the counts of constructive trust and conversion. The court found in favor of defendants on all other counts. Defendant Kackert now appeals.

Opinion

# I

■■ ■ After hearing 10 days of testimony and argument and reviewing over 1700 pages of evidence and transcripts, the trial judge found that George Kackert was not an innocent third party without knowledge who might otherwise be insulated from liability to Kearney, and held that Kearney was entitled to judgment against Kackert under the theories of conversion and constructive trust. The trial court found that (1) Kackert had actual knowledge of the source of the funds that he was accepting in the discharge of Popp's personal debts; (2) he understood Popp to be a corporate officer of INCA; and that (3) Kackert was thus charged with knowledge that the funds he received in repayment of a personal loan were funds held in trust by Popp as a deposit for the completion of the Kearney job. The trial court noted that Illinois law will not permit a party with knowledge of a breach of trust to receive trust funds in the discharge of personal debts and then withhold them from recapture by the aggrieved party.

Based upon the trial court's findings of fact and our reading of Illinois law, we find that the imposition of a constructive trust on Kackert arising out of his knowledge of a breach of a fiduciary duty is not against the manifest weight of the evidence but that the finding of conversion was error.

# II

A constructive trust is one raised by operation of law and imposed by a court of equity where the legal title to money or property is obtained by a person in violation of some duty owing to him who is equitably entitled thereto. (*Compton v. Compton* (1953), 414 Ill. 149, 111 N.E.2d 109.) A constructive trust will be used to compel a party who unfairly holds a property interest or money to convey that property to the one to whom it justly belongs (*Labarbera v. Labarbera* (1983), 116 Ill. App. 3d 959, 452 N.E.2d 684); to prevent a person from holding for his own benefit an advantage gained by the abuse of a fiduciary relationship (*Perry v. Wyeth* (1962), 25 Ill. 2d 250, 184 N.E.2d 861); or, where the person holding property would be unjustly enriched if he were permitted to retain such property. (*Zack Co. v. Sims* (1982), 108 Ill. App. 3d 16, 438 N.E.2d 663.) An action to prevent unjust enrichment is maintainable in all cases where one person has received money under such circumstances that in equity and good conscience he ought not be allowed to keep it.

*Village of Wheeling v. Stavros* (1980), 89 Ill. App. 3d 450, 411 N.E.2d 1067.

A confidential or fiduciary relationship exists where there is a special confidence reposed on one side and a resulting superior knowledge and influence on the other. (*Hubbard v. Schumaker* (1980), 82 Ill. App. 3d 476, 402 N.E.2d 857.) A fiduciary or confidential relationship which does not exist as a matter of law must be proved by clear and convincing evidence in order to establish it as the basis for the imposition of a constructive trust. (*Hubbard v. Schumaker* (1980), 82 Ill. App. 3d 476, 402 N.E.2d 857.) A fiduciary relationship exists as a matter of law between principal and agent. *Carroll v. Caldwell* (1957), 12 Ill. 2d 487, 147 N.E.2d 69.

In the instant case, the trial court found that Kothari, by virtue of Kearney's reliance on him, was an agent and fiduciary of Kearney. Because the facts in a constructive trust case, including those facts which establish the existence of a fiduciary relationship, are of such consequence, the opinion of the trier of fact must be given especially great weight. (*Whewell v. Cox* (1977), 54 Ill. App. 3d 179, 369 N.E.2d 330.) In light of the record before us, and in view of Kothari's admission that Kearney relied upon him to solicit bids and in accepting the INCA bid, the trial court's finding of a fiduciary relationship is not against the manifest weight of the evidence.

A constructive trust may be imposed upon property obtained by a third person through his knowledge of or involvement in a fiduciary's breach of duty. (*Village of Wheeling v. Stavros* (1980), 89 Ill. App. 3d 450, 411 N.E.2d 1067.) A third party's knowing participation in a breach of duty by an agent is a wrong against the principal which may subject the third party to liability. (*Village of Wheeling v. Stavros* (1980), 89 Ill. App. 3d 450, 411 N.E.2d 1067.) An agent must make known to his principal all material facts which are within the agent's knowledge that may in any way affect the transaction and subject matter of his agency. (*Browder v. Hanley Dawson Cadillac Co.* (1978), 62 Ill. App. 3d 623, 379 N.E.2d 1206.) An agent owes a duty of loyalty and full disclosure to his principal. *Willis v. Ruthrauff & Ryan, Inc.* (1957), 14 Ill. App. 2d 259, 144 N.E.2d 636.

Here, Kearney relied completely on Kothari, its agent and fiduciary, to obtain construction bids for its office relocation. Kothari presented Kearney with but a single bid, that of INCA, the corporation of which, unbeknownst to Kearney, Kothari was an incorporator and with which he had extremely close ties. Kothari advised Kearney to accept the INCA bid and, relying on Kothari's advice, Kearney did so. The trial court found that at the time Kearney accepted the

INCA bid, Kothari had not disclosed many material facts, including his role as an incorporator of INCA; that INCA had only been incorporated some several weeks prior to bidding; and that the Aztec woodworking facility, which INCA proposed to use for the Kearney project, had just been purchased out of bankruptcy and had notably limited woodworking capabilities and experience.

■ It is more than reasonable to find that Kothari's failure to disclose to Kearney these salient facts was a breach of his fiduciary duty. Moreover, it is clear from the record that Kothari's failure to disclose these facts, his presentation to Kearney of but a single bid, his advice to Kearney that it accept the INCA bid, and his advice to Kearney that Kearney pay to INCA a 50% earnest money deposit on the job caused the property at issue, the $175,000, to be transferred to a third party, namely, INCA International.

> "Where a fiduciary in violation of his duty to the beneficiary transfers property *or causes property to be transferred* to a third person, the third person, if he gave no value or if he had notice of the violation of duty, holds the property upon a constructive trust for the beneficiary." (Emphasis added.) Restatement of Restitution sec. 201(1) (1937).

Here, the third party to which Kothari caused the property to be transferred was INCA International and Popp. The issue then becomes whether this third party had notice of Kothari's violation of his fiduciary duty to Kearney. If so, INCA and Popp, its officer, held Kearney's money upon a constructive trust for the benefit of Kearney.

If an officer of a corporation has knowledge or notice of a fact, that knowledge or notice is generally imputed to the corporation. (*In re Pubs, Inc.* (7th Cir. 1980), 618 F.2d 432.) The facts adduced at trial and the findings by the trial court support the proposition that Popp, an officer of INCA, had knowledge that the earnest money deposit obtained from Kearney was obtained in breach of Kothari's fiduciary duty to Kearney. Popp's intimate and ongoing relationship with Kothari, one of Popp's co-incorporators in INCA, their meetings and discussions concerning INCA/Aztec, and Popp's own knowledge of certain factors not disclosed to Kearney prior to its acceptance of the INCA bid suggest that Popp was not without notice of Kothari's breach of duty when he received Kearney's deposit. Both Popp and imputedly INCA, thus having notice of this violation of duty by Kothari, held the job-deposit money as constructive trustees for the benefit of Kearney. It was therefore a breach of their trust to transfer the funds paid to INCA, either on the ground that those

funds were held in trust for commencement of the Kearney project, as the trial court found; or, by virtue of the fact that INCA took from a fiduciary, Kothari, with notice that he was violating his fiduciary duty. *Robert P. Butts & Co. v. Estate of Butts* (1970), 119 Ill. App. 2d 242, 255 N.E.2d 622.

These same facts support the finding that defendant Kackert, who took from INCA, is liable to Kearney under the theory of constructive trust:

> "b. *Transfer by non-fiduciary.* Where a person has an equitable interest in property held by another who is not in a fiduciary relation to him, and the holder transfers the property to a third person who is not a bona fide purchaser, the equitable interest is not cut off by such transfer and the equitable claimant can enforce it against the third person. Thus, where a person acquires property by fraud or otherwise under such circumstances that he holds it upon a constructive trust for the transferor, and the transferee transfers the property to a person who is not a *bona fide* purchaser, the latter holds the property upon a constructive trust for the person equitably entitled to it." Restatement of Restitution sec. 168(1), comment b, at 685 (1937).

Kearney had an equitable interest in the funds paid to INCA as an earnest money deposit on its design job. That money was held by INCA, who was not in a fiduciary relationship to Kearney. INCA, by Popp, an officer thereof, transferred the property to Kackert, Popp's creditor. In the case of a holder of a negotiable instrument, a purchaser, here a creditor who received the negotiable instrument as security for an antecedent debt (4 Scott on Trusts sec. 306 (3d ed. 1967)), has such notice as to amount to bad faith and give rise to a constructive trust if he has knowledge that a fiduciary has negotiated the instrument in breach of his fiduciary duty. (Ill. Rev. Stat. 1983, ch. 26, par. 3—304(2).) It is not against the manifest weight of the evidence, based on the record before us, to find that Kackert had knowledge that Kothari procured Kearney's acceptance of the INCA bid in breach of his fiduciary duty; and that the money Kackert accepted as repayment of the personal loan he had advanced to Popp, in the form of a negotiable instrument drawn by INCA, was in fact the earnest money job deposit paid to INCA by Kearney. Kackert was therefore not a bona fide purchaser but rather held the property transferred to him as a constructive trustee for the benefit of Kearney. For these reasons, we find that the trial court's imposition of a constructive trust upon Kackert was not error.

## III

■ In addition to the imposition of a constructive trust for breach of a fiduciary duty, the trial court found defendant Kackert guilty of conversion. The elements of conversion are (1) unauthorized and wrongful assumption of control or ownership by one person over the personality of another; (2) the other person's right in the property; (3) the right to immediate possession of the property; and (4) a demand for possession. (*Scheduling Corp. of America v. Massello* (1983), 119 Ill. App. 3d 355, 456 N.E.2d 298.) The essence of conversion is not acquisition by the wrongdoer but a wrongful deprivation of the owner thereof. (*Jensen v. Chicago & Western Indiana R.R. Co.* (1981), 94 Ill. App. 3d 915, 419 N.E.2d 578.) We must agree with defendant that neither the essential elements nor the essence of conversion is present under the facts at bar.

It is undisputed that Kearney voluntarily permitted to be certified the deposit check Kothari delivered to INCA, thereby discharging Kearney from liability (Ill. Rev. Stat. 1983, ch. 26, par. 3—411) and necessarily curtailing its right to possession thereof. While Kearney maintained an equitable interest in the funds paid to INCA, it relinquished its legal right to possession upon certification, where, as here, there has been no evidence to show that the certification has been procured by mistake or fraud. (*Van Geem v. Skokie Trust & Savings Bank* (1963), 41 Ill. App. 2d 77, 190 N.E.2d 180.) It has not been proved that INCA was unauthorized to assume control or ownership of Kearney's deposit money. At the time INCA, via Popp, turned over the funds to Kackert, Kearney no longer owned the funds. Kackert, therefore, did not wrongfully deprive Kearney of its deposit.

■ Moreover, Kearney readily admits that at no time did he ever make demand on Kackert for return of the job deposit. This court has formerly acknowledged that the cases are divided as to whether an allegation of demand and refusal is always necessary to maintain a cause of action for conversion. (*Monroe County Water Cooperative v. City of Waterloo* (1982), 107 Ill. App. 3d 477, 437 N.E.2d 1237.) The *Monroe* court noted, however, that in those cases which do not impose on a plaintiff the requirement of demand and refusal, the defendant has sold or otherwise disposed of the property in question and thus no longer has possession thereof. (107 Ill. App. 3d 477, 481, 437 N.E.2d 1237.) In such cases, demand would indeed be futile. This is not one of those cases. In the instant case, defendant Kackert is in possession of the subject property so that no such futility of demand exists. Correspondingly, an action for conversion under these circumstances must include a demand for possession or it cannot be said that there has

been a deprivation. *Hoffman v. Allstate Insurance Co.* (1980), 85 Ill. App. 3d 631, 407 N.E.2d 156.

In light of these considerations, we find that plaintiff has failed to carry his burden of proving all of the essential elements necessary to constitute conversion and his entitlement to the remedy arising therefrom.

## IV

■ Defendant lastly contends that, under any view of these facts, he can only be held liable for the money he actually received, $106,452, and not for the entire amount of Kearney's loss, the $175,000 deposit. The trial court found Kackert jointly and severally liable for the totality of Kearney's loss based on its finding of conversion and constructive trust. Having found no conversion to lie, we find that joint and several liability is inappropriate solely in relation to the equitable remedy of constructive trust.

A constructive trust arises only where there is property on which it can be fastened, and such property is held by the person to be charged as constructive trustee. (*Graham v. Mimms* (1982), 111 Ill. App. 3d 751, 444 N.E.2d 549.) Once the court determines that a defendant must make restitution, it orders him to transfer that property of which he is a trustee to the beneficiary of this judicially created trust. (*Graham v. Mimms* (1982), 111 Ill. App. 3d 751, 444 N.E.2d 549.) So, where a person holds property subject to an equitable lien in favor of another and transfers it to a person who is not a *bona fide* purchaser, the latter holds that particular property as constructive trustee. Restatement of Restitution sec. 168(1), comment b, at 685 (1937).

The purpose of a constructive trust is to prevent unjust enrichment. (*David v. Russo* (1983), 119 Ill. App. 3d 290, 456 N.E.2d 342.) The amount by which Kackert was unjustly enriched was $106,452. The property upon which the judicially created constructive trust may be fastened and that by which defendant must make restitution is the property of which Kackert is in possession. Kackert must restore to plaintiff that in his possession which rightfully belongs to plaintiff. The trust property here and that to which the beneficiary, Kearney, is entitled is $106,452.

## V

For all of the above reasons, we affirm the trial court's imposition of a constructive trust, reverse the finding of conversion, and reduce the amount of the constructive trust imposed on defendant Kackert to $106,452, the money that he actually received.

Affirmed in part, reversed in part, and modified.

JOHNSON and ROMITI, JJ., concur.