LORI BARR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Barr v. Commissioner
Docket No. 37681-86
United States Tax Court
T.C. Memo 1989-420; 1989 Tax Ct. Memo LEXIS 418; 57 T.C.M. (CCH) 1261; T.C.M. (RIA) 89420; August 14, 1989
David A. Shapiro, for the petitioner. Diane L. Berkowitz, for the respondent. GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge: Respondent determined a $ 3,587 deficiency in petitioner's 1982 income tax. The deficiency resulted from the disallowance of expense deductions related to litigation instituted by petitioner as a trust beneficiary. The issue presented for our consideration is whether these expenses are properly deductible under either section *419 212(1)[1] for the production or collection of income or section 212(2) for the management, conservation or maintenance of property held for the production of income. FINDINGS OF FACT The parties entered into and submitted stipulated facts which, together with the attached exhibits, are incorporated by this reference. Petitioner Lori Barr resided in Scottsdale, Arizona, when the petition was filed in this case. The Trusts
In February 1976, petitioner's mother, Esther Barr, executed a trust agreement (Esther Barr Trust Agreement) in which she, as grantor, transferred certain property to herself as trustee of the Esther Barr Trust to be administered initially for her own benefit during her life. Upon Esther Barr's death, resignation or incapacity, the trust agreement provided that Joseph Barr, petitioner's father, and William Barr, petitioner's brother, would become cotrustees of the Esther Barr Trust and any other trust created under the Esther Barr *420 Trust Agreement. In the event Joseph Barr could not or would not act as a cotrustee, for any reason, William Barr would act as sole trustee. On November 2, 1976, Esther Barr amended the Esther Barr Trust Agreement to remove Joseph Barr as the subsequent cotrustee. The amendment provided that Esther Barr and William Barr would act as cotrustees of each trust created under the Esther Barr Trust Agreement, and upon the death, resignation or incapacity of Esther Barr, William Barr would act as sole trustee. In March 1976, petitioner's father executed a parallel trust agreement (Joseph Barr Trust Agreement) in which he, as grantor, transferred certain property to himself as trustee of the Joseph Barr Trust to be administered initially for his benefit during his life. It similarly provided that upon Joseph Barr's death, resignation, or incapacity, Esther Barr and William Barr would become cotrustees of the Joseph Barr Trust and any other trust created under the Joseph Barr Trust Agreement. If Esther Barr could not or would not act as cotrustee, William Barr would act as sole trustee. The Esther Barr Trust Agreement and the Joseph Barr Trust Agreement (collectively referred to as *421 the Trust Agreements) both provided for the creation and administration of additional trusts upon the deaths of the respective grantors. They each provided that upon the death of the trust grantor, if he or she was survived by his or her respective spouse, "the Trustee shall create from the trust estate of the trust, including therein any property distributable to the trust pursuant to the provisions of my Will, a new separate trust, which shall be designated the 'Marital Deduction Trust' and administered and distributed as hereinafter provided in this Article." It was provided that one-half of the value of the grantor's adjusted gross estate (as finally determined for Federal estate tax purposes), with certain adjustments, would pass to the Marital Deduction Trust for the benefit of the surviving spouse. Upon the surviving spouse's death, the trustee was instructed to distribute the remaining estate of the Marital Deduction Trust to what was termed the Residuary Trust, to be held, administered, and distributed as provided in the provisions of the Trust Agreements. Each respective residuary trust created by the Trust Agreements also contained the entire trust estate not allocated *422 to the respective marital deduction trust. The beneficiaries of the two Residuary Trusts (sometimes collectively referred to as the Trusts) were the respective grantor's spouse, Joseph and Esther Barr's children, and their descendants, per stirpes. At all times relevant here, petitioner was a vested beneficiary under the Trusts. The Residuary Trusts provided that "If my [spouse] shall not survive me, the trust estate [which included the principal and income already in the Trusts as well as the property passing to the Trusts from Esther's and Joseph's respective estates] shall be divided into shares per stirpes among my descendants who shall be living at the time of my death * * * and distributed to said descendant * * *." (Emphasis in original.) The Residuary Trusts further provided that "Upon the death of my [spouse] any unappointed portion of the then remaining trust estate * * * shall be divided by the Trustee into shares per stirpes among my descendants who shall be living on such date * * * and distributed to said descendant * * *." [2] (Emphasis in original.) *423 On March 3, 1976, and March 17, 1976, Joseph Barr and Esther Barr executed their respective last wills and testaments. Joseph and Esther Barr bequeathed their entire estates, other than some miscellaneous or personal articles, to the trustee under their respective Trust Agreements "to be held, administered and distributed pursuant to the provisions of said Trust Declaration, as * * * it shall have been last amended before my death." Joseph Barr died on May 11, 1976. According to the provisions of his Will and the Joseph Barr Trust Agreement, approximately one-half of the Joseph Barr Trust estate (including property passing to the trust under his Will) passed to the Marital Deduction Trust created under the Joseph Barr Trust Agreement. The remaining portion of the Joseph Barr Trust estate passed to the Residuary Trust. William Barr and Esther Barr were the cotrustees of these trusts. Esther Barr died on January 6, 1978. Under the provisions of her Will and the Esther Barr Trust Agreement, the entire trust estate (including property passing to the trust under her Will) passed to the Residuary Trust created under the Esther Barr Trust Agreement. Upon Esther's death, the trustee *424 was instructed to distribute the remaining estate of the Marital Deduction Trust of the Joseph Barr Trust Agreement to the Residuary Trust of the Joseph Barr Trust Agreement. Also upon Esther's death, William Barr became the sole trustee of both Residuary Trusts with the duty to distribute the trust assets to the beneficiaries, petitioner and William Barr. The Trust Litigation
Sometime prior to February 1981, petitioner consulted with and retained attorneys Albert Brooks Friedman and Gerald M. Petacque regarding the Trust Agreements, the trusts created under the Trust Agreements, the management of the trust assets, and petitioner's rights and interests under the trusts. Petitioner's discussions with and the reason for retaining Mr. Friedman and Mr. Petacque centered on alleged self-dealing involving trust property by William Barr, as trustee of the trusts, and Allen S. Pesman (Pesman), the attorney advising William Barr during his administration of the trusts. The consultations also concerned petitioner's ability to acquire possession of any trust property to which she was entitled. In the course of these consultations, petitioner and her two attorneys executed the following *425 retainer agreement: I [petitioner] hereby retain ALBERT BROOKS FRIEDMAN, LTD. and GERALD M. PETACQUE to represent me in the cause of action which I now have against William Barr and/or Allen S. Pesman arising out of their handling of the trusts and estates of my father and mother, Joseph and Esther Barr. In consideration of the services rendered and to be rendered I agree to pay them the following amounts: 1. A non-refundable retainer of $ 6,000.00 to be applied against a 25% contingency in the event that the matter is settled without the filing of a law suit. 2. A fee of forty (40%) percent of any and all amounts recovered less the retainer paid, in the event that a law suit is filed and the litigation is terminated by a decision of Court or the matter is substantially litigated and settled prior thereto. 3. A contingency fee of fifty (50%) percent of any amount recovered less the retainer paid, in the event that the cause comes to a judicial determination and an appeal is taken from said determination by either party. I further understand that the court costs, transcript costs and possible appellate costs shall be extra and that I have been given an estimate of approximately *426 $ 1,500.00 for costs for the trial of this case, one-third of which will be deposited with counsel upon their retainer and thereafter shall be paid into the client's funds account as spent and requested. I further understand that in the event there is no recovery that the retainer is non-refundable, but that there will be no other charge for legal services rendered. In February 1981, petitioner, through her attorneys, filed a civil complaint in the Circuit Court of Cook County, Illinois, Docket No. 81 CH 877, against William Barr, trustee, Allen S. Pesman, Barr Machinery, Inc., and W. E. Bidmore, Inc. On April 21, 1982, petitioner filed an amended complaint (the complaint and the amended complaint shall be referred to collectively as complaints). In Count I of the complaints, petitioner alleged that in 1969, Pesman, William Barr, and Joseph Barr formed the Bannockburn Real Estate Partnership to purchase land in Bannockburn, Illinois, and build an office complex. Pesman owned a 50-percent partnership interest, Joseph Barr owned a 25-percent interest, and William Barr owned the remaining 25 percent. Petitioner alleged that upon Joseph Barr's death, his Bannockburn *427 partnership interest passed to the trustee under the Joseph Barr Trust Agreement and that shortly thereafter William Barr, as trustee, sold the partnership interest to the Bannockburn partnership and/or Pesman for $ 150,000. Allegedly, William Barr had the Trusts finance Pesman's purchase with an uncollateralized low interest-bearing loan. Petitioner contended that no appraisal of the partnership interest was obtained prior to the sale. Count I also contained an allegation that William Barr retained as his own property a diamond ring and a piano which were the property of petitioner and/or the Trusts. In Counts I and II of the complaints, petitioner further alleged that William Barr, as trustee, upon the advice of Pesman, loaned in excess of $ 250,000 to W. E. Bidmore, Inc. (Bidmore), a corporation owned by William Barr. Allegedly, the loan was at a low rate of interest and not a prudent investment for the Trusts. Bidmore, and later Barr Machinery, Inc. (apparently a successor in interest to Bidmore which was also owned by William Barr), allegedly used the loan proceeds in the speculative business of buying and selling used machinery and equipment. Bidmore also purportedly *428 used the loan proceeds to repay an unrelated loan from Financial Media, Inc. (Financial), a corporation owned by Pesman. Pesman then allegedly withdrew these funds from Financial in the form of a loan in order to help Pesman finance the Bannockburn venture. Petitioner alleged that these loan transactions were performed without her knowledge and consent and "were to her detriment inasmuch as a distribution should have been made to her at that point in time of her one-half (1/2) interest in the trust estate * * *." In Count III of the complaints, petitioner alleged that William Barr and Pesman "conspired amongst themselves to their benefit and the detriment of the aforestated trusts, estates and Plaintiff" with respect to the transactions alleged in Counts I and II of the complaints. Petitioner sought the following relief in the complaints: (1) the appointment of an appraiser to value the Trusts' interest in the Bannockburn Real Estate Partnership on the date the interest was sold by William Barr; (2) an accounting of the proceeds of the sale; (3) $ 15,000 in damages against William Barr and Pesman for the sale; (4) the imposition of a constructive trust upon the profits made by *429 Bidmore, Barr Machinery, Inc., and/or William Barr on the purchase and sale of machinery acquired with the proceeds of the loan from the Trusts; (5) an accounting of the loan proceeds; (6) the removal of William Barr as trustee; (7) actual damages in the amount of $ 250,000 that resulted from the above described transactions that were conspired in and carried out by William Barr and Pesman; and (8) punitive damages in the amount of $ 750,000. As a result and in furtherance of the trust litigation, petitioner's attorneys reviewed documents, interviewed witnesses, drafted pleadings and discovery requests, made court appearances, participated in settlement negotiations, and prepared for and attended depositions, including that of petitioner. Attorney Albert Brooks Friedman did not keep records regarding either the amount of time he spent on petitioner's lawsuit or how he spent his time because he was retained on a contingency fee basis. In addition to the legal fees, petitioner, who lived in Arizona during the pendency of the trust litigation, incurred $ 901.64 during 1982 in travel and other related expenses in furtherance of the litigation. As indicated below, petitioner claimed *430 $ 1,300 in travel expenses on her 1982 return; the parties now agree the correct amount is $ 901.64. On October 4, 1982, petitioner settled her lawsuit for $ 45,000, $ 31,350 of which was paid from the Esther Barr Trust. Petitioner and William Barr executed a written settlement agreement which stated in relevant part as follows: Each of the undersigned, LORI BARR and WILLIAM BARR, * * * being all of the persons in interest entitled to distribution of the trust assets remaining at the death of ESTHER BARR under and subject to the provisions of the JOSEPH BARR TRUST DATED MARCH 3, 1976 * * * and the ESTHER BARR TRUST DATED FEBRUARY 26, 1976 * * * in consideration of, and for the purpose of inducing, WILLIAM BARR, as Trustee of the Joseph Barr Trust and the Esther Barr Trust, to make distribution of the assets now remaining in said Trusts without court approval of his Trustee Account; in consideration of, and for the purpose of inducing, each undersigned hereto to execute this Approval of Trustee Account, Receipt, Release and Indemnification Agreement; and in consideration of, and for the purpose of inducing the settlement of all disputes and controversies between the undersigned *431 and others arising out of the administration of the Joseph Barr Trust and the Esther Barr Trust, as embodied in [the trust litigation at issue], by means of which settlement the sum of $ 45,000.00, including her portion of the sums being distributed under this [Agreement], is to be distributed to Lori Barr: (1) * * * does hereby approve all of the transactions set forth in the Trustee Account, including but not limited to those transactions occurring after the death of Esther Barr, and does hereby approve of the distribution of the Trust assets in the manner set forth in the attached Schedule of Distribution * * *; (2) Acknowledges receipt of the assets set forth opposite his or her name on the Schedule of Distribution as being in full and complete satisfaction of his or her share of the Joseph Barr Trust and the Esther Barr Trust and does hereby forever release and discharge William Barr, individually and as Trustee of the Joseph Barr Trust and the Esther Barr Trust, and his * * * attorneys and assigns from any and all liability arising out of his administration of said Trusts, including but not limited to all of the transactions set forth in the Trustee Account * * *. *432 Of the $ 45,000 settlement, petitioner received $ 31,683.25 on or about October 19, 1982; the balance, $ 13,316.75, was retained by petitioner's attorneys as legal fees and expenses which were reasonable in amount and proximately related to the trust litigation. In addition to the $ 13,316.75, Mr. Friedman retained the $ 6,500 [3] retainer paid by petitioner as part of his fee. Apparently, because petitioner paid the $ 6,500 prior to 1982, the retainer is not at issue here. On her 1982 income tax return, petitioner deducted $ 13,317 in legal fees and $ 1,300 in travel expenses. She did not include the settlement amount in income. OPINION The sole issue presented for our consideration is whether the trust litigation expenses are, as petitioner contends, deductible under section 212. Section 212 provides, in pertinent part, as follows: In the case of an individual, there shall be allowed *433 as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year -- (1) for the production or collection of income; (2) for the management, conservation, or maintenance of property held for the production of income; * * * The term "income" for section 212 purposes "includes not merely income of the taxable year but also income which the taxpayer has realized in a prior taxable year or may realize in subsequent taxable years; and is not confined to recurring income but applies as well to gains from the disposition of property." Sec. 1.212-1(b), Income Tax Regs.
In their respective analyses of the deductibility of litigation expenses, both parties rely on the origin-of-the-claim test, first enunciated by the Supreme Court in United States v. Gilmore, 372 U.S. 39 (1963). The issue before the Court in Gilmore was whether litigation expenses were deductible under the predecessor to section 212(2). The Supreme Court held: the characterization, as "business" [profit-seeking purpose] or "personal," of the litigation costs of resisting a claim depends on whether or not the claim arises in connection with the taxpayer's *434 profit-seeking activities. It does not depend on the consequences that might result to a taxpayer's income-producing property from a failure to defeat the claim * * *. * * * * * * the origin and character of the claim with respect to which an expense was incurred, rather than its potential consequences upon the fortunes of the taxpayer, is the controlling basic test of whether the expense was "business" or "personal" and hence whether it is deductible or not under [the predecessor to section 212(2)] * * *. [United States v. Gilmore, supra at 48-49; emphasis in original.] We applied the origin-of-the-claim test in Boagni v. Commissioner, 59 T.C. 708, 713 (1973), as follows: Quite plainly, the "origin-of-the-claim" rule does not contemplate a mechanical search for the first in the chain of events which led to the litigation but, rather, requires an examination of all the facts. The inquiry is directed to the ascertainment of the "kind of transaction" out of which the litigation arose. * * * Consideration must be given to the issues involved, the nature and objectives of the litigation, the defenses asserted, the purpose for which *435 the claimed deductions were expended, the background of the litigation, and all facts pertaining to the controversy. [Citations and fn. ref. omitted.] The test for determining the tax treatment of costs incurred in litigation is "ordinarily an objective one, looking to the 'origin' or 'character' of the claim litigated rather than to the subjective 'purpose' of the taxpayer in pursuing it." Burch v. United States, 698 F.2d 575, 577 (2d Cir. 1983), citing Woodward v. Commissioner, 397 U.S. 572, 577-578 (1970). [4]
In applying the origin-of-the-claim test, respondent argues that the trust litigation related to the acquisition of property or title to property. According to respondent, the litigation expenses *436 therefore must be capitalized. Sec. 1.212-1(k), Income Tax Regs. Respondent relies on a line of cases which stand for the proposition that all expenses, including legal expenses, directly related to the purchase, acquisition or sale of a capital asset are not deductible. Woodward v. Commissioner, 397 U.S. 572 (1970); United States v. Hilton Hotels Corp., 397 U.S. 580 (1970); Reed v. Commissioner, 55 T.C. 32 (1970). Respondent focuses on the fact that petitioner asserted a constructive trust claim in her lawsuit and that petitioner had not received her rightful share of the trust assets before the trust litigation commenced. Respondent's argument is supported by Albert Friedman's testimony that the litigation was an attempt "To get [petitioner] her money" and by the settlement agreement by which petitioner compromised the litigation for her share of the remaining trust assets. Moreover, in both the original and amended complaints, petitioner requested that she recover, by an award of damages, the trust assets and income she allegedly lost as a result of the mismanagement and self-dealing committed by the trustee and Pesman. *437 Conversely, petitioner relies on a line of cases which stand for the proposition that all litigation expenses, including legal expenses, incurred by a trust beneficiary/taxpayer are properly deductible when they have their source in the management, conservation and maintenance of income-producing property in which the taxpayer holds a sufficient interest. Tyler v. Commissioner, 6 T.C. 135 (1946); Estate of Kincaid v. Commissioner, T.C. Memo. 1986-543; Mann v. Commissioner, T.C. Memo. 1965-161; Fletcher v. Commissioner, a Memorandum Opinion of this Court dated Aug. 28, 1951; Matthews v. United States, 425 F.2d 738 (Ct. Cl. 1970). In support of her contention that the trust litigation expenses are deductible under section 212, petitioner focuses on her allegations in the complaints concerning self-dealing and mismanagement and her request that William Barr be removed as trustee. Petitioner bears the burden of proof. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a). Legal fees and other expenses incurred to acquire or dispose of a capital asset or to perfect or defend title are nondeductible *438 capital expenditures. See Woodward v. Commissioner, supra; United States v. Hilton Hotels Corp., supra; Mosby v. Commissioner, 86 T.C. 190 (1986); Von Hafften v. Commissioner, 76 T.C. 831 (1981); Boagni v. Commissioner, supra; Reed v. Commissioner, supra; Brown v. United States, 526 F.2d 135 (6th Cir. 1975). Likewise, expenses paid or incurred in protecting or asserting various other proprietary-type rights to property are also not deductible. These rights include a beneficiary's rights to property under a testamentary trust. Sec. 1.212-1(k), Income Tax Regs.Section 1.212-1(k), Income Tax Regs., provides: (k) Expenses paid or incurred in defending or perfecting title to property, in recovering property (other than investment property and amounts of income which, if and when recovered, must be included in gross income), or in developing or improving property, constitute a part of the cost of the property and are not deductible expenses. Attorneys' fees paid in a suit to quiet title to lands are not deductible; but if the suit is also to collect *439 accrued rents thereon, that portion of such fees is deductible which is properly allocable to the services rendered in collecting such rents. Expenses paid or incurred in protecting or asserting one's rights to property of a decedent as heir or legatee, or as beneficiary under a testamentary trust, are not deductible. The trust litigation here involved what we see as four causes of action. The first, pertaining to the sale by the trustee of the 25-percent interest in the Bannockburn partnership to Pesman, alleged that the trustee and Pesman breached their fiduciary duties by not acquiring an appraisal of the partnership interest before the sale, by engaging in self-dealing, and by the trustee's financing Pesman's purchase of the partnership interest with a low-interest bearing, unsecured loan. Petitioner sought an accounting of the sale proceeds, an appraisal of the partnership interest, and $ 15,000 in damages. The second cause of action, pertaining to the $ 250,000 loan from William Barr, trustee, to Bidmore, alleged that the loan was not a prudent investment in that the money was used by Bidmore and later by Barr Machinery in buying and selling used machinery. Petitioner alleged *440 the provisions of the loan were not followed and the trustee and Pesman engaged in self-dealing by making the loan to Bidmore, a company owned by William Barr, at a below-market interest rate. Petitioner requested that a constructive trust be imposed upon the profits made by Bidmore, Barr Machinery, and William Barr from the purchase and sale of the machinery. Petitioner also sought an accounting of the loan proceeds. The third cause of action sought the removal of William Barr as trustee and the appointment of a successor trustee. The fourth cause of action alleged that the trustee and Pesman conspired to their benefit and to the detriment of petitioner in carrying out the sale and loan transactions described above. Petitioner sought actual damages in the amount of $ 250,000 and punitive damages in the amount of $ 750,000. Constructive Trust Claim
Respondent contends that the nature of a constructive trust claim is the acquisition of title to property. He therefore argues that any resulting expenses are capitalized, not deducted. Respondent relies on Reed v. Commissioner, supra, where a trust beneficiary unsuccessfully attempted to deduct legal expenses *441 incurred during a constructive trust suit. There, the taxpayer's father died testate; the major asset in his estate was a 30-percent interest in a partnership. The taxpayer's mother owned a 20-percent interest in the partnership and another family, the Robilios, owned the remaining 50-percent interest. The father's will provided for the creation of two trusts: a marital trust for the taxpayer's mother, giving her a life estate with a testamentary general power of appointment over corpus; and a residuary trust for the taxpayer's life, providing for the payment to her of a minimum of $ 400 per month from net income during the life of her mother and after her mother's death a maximum of $ 1,000 per month with any excess income to be added to corpus. The trustee was instructed to encroach on the corpus for sickness and other emergencies, and as was necessary for the proper support and maintenance of the taxpayer. As authorized by the father's will, the executor of the estate sold the father's interest in the partnership to the Robilio family. After her mother died, the taxpayer brought suit against the Robilio family alleging that they had misrepresented the value of the interest. *442 The taxpayer sought to have a constructive trust imposed on the partnership interest with an order requiring reconveyance to her father's estate and an accounting for the profits from the time of purchase. In addressing whether the taxpayer's litigation expenses were deductible, we applied the origin-of-the-claim test. We found that the taxpayer was attempting to reacquire title to the partnership interest, and that "Not only was 'the origin of the claim litigated * * * in the process of acquisition itself,' but the litigation was a direct attempt to acquire." Reed v. Commissioner, 55 T.C. 32, 40 (1970), quoting Woodward v. Commissioner, 397 U.S. 572, 577 (1970). As further support for our conclusion in Reed that the legal expenses were in the nature of capital expenditures, we noted that because the taxpayer's income interest was limited to $ 1,000 per month, there was little possibility of an increase in the taxpayer's income if the claim proved successful. We agree with respondent that a constructive trust, if imposed by a court, requires, in a sense, a conveyance of title to the property at issue in the claim. A constructive trust is *443 one raised by operation of law and imposed by a court of equity where the legal title to money or property is obtained by a person in violation of some duty owing another who is equitably entitled to the property. Compton v. Compton, 414 Ill. 149, 111 N.E. 2d 109 (1953); A.T. Kearney, Inc. v. Inca International, Inc., 132 Ill. App. 3d 655, 477 N.E. 2d 1326 (1985). A constructive trust will be used to compel a party who unfairly holds a property interest or money to convey that property to the one to whom it justly belongs, Labarbera v. Labarbera, 116 Ill. App. 3d 959, 452 N.E. 2d 684 (1983); to prevent a person from holding for his own benefit an advantage gained by the abuse of a fiduciary relationship, Perry v. Wyeth, 25 Ill. 2d 250, 184 N.E. 2d 861 (1962); or where the person holding property would be unjustly enriched if he were permitted to retain such property. Zack Co. v. Sims, 108 Ill. App. 3d 16, 438 N.E. 2d 663 (1982). Although we agree with respondent's basic premise regarding constructive trusts, our agreement ends there. In determining whether legal expenses are deductible under section *444 212, our focus is not the potential consequences of the litigation, but rather the origin and character of the controversy which led to the expenses. United States v. Gilmore, 372 U.S. 39 (1963). We find that the origin and character of petitioner's constructive trust claim was not the conveyance of title. The origin of the claim was her brother's self-dealing and the resulting loss of taxable income; the character of the claim was the recovery of taxable income lost because the trustee breached his fiduciary duty to petitioner. In her complaints, petitioner alleged that the $ 250,000 loan from William Barr, acting as trustee, to William Barr's personal corporations was improperly made at a low rate of interest. As a result, the trust assets purportedly were not generating a fair amount of interest for the Trusts and petitioner, a beneficial owner of the trust assets and income. Therefore, petitioner sought to recover her portion of the difference between the rate of interest charged and a fair rate of interest. Although petitioner attempted to accomplish this by imposing a constructive trust on the income generated by William Barr and his corporations from the *445 loan proceeds, the origin and nature of this portion of the controversy was the recovery of lost income. The constructive trust claim was merely the vehicle by which petitioner attempted to recover her lost income. The true character of the constructive trust claim is also evidenced by attorney Albert Brooks Friedman who testified that petitioner commenced the litigation in an attempt to recover "income." In addition, although the consequence of a successful constructive trust suit is the acquisition of title, it would have been incidental in this case. This is supported by Reed v. Commissioner, supra, where, in applying the origin-of-the-claim test, we considered whether the partnership interest represented or affected the taxpayer/beneficiary's income interest. We determined in Reed v. Commissioner, supra, however, that the origin of the controversy was a dispute over title to the partnership interest, not a dispute over income. Moreover, any argument that the constructive trust claim was an attempt by petitioner to recover trust corpus (the loan principal) is not persuasive. As a trust beneficiary, petitioner already possessed a right *446 to the loan amount. If she wanted to recover the loan principal, petitioner could have requested that the loan agreement be rescinded. However, no such attempt was made. All that she requested with respect to the loan proceeds was an accounting. [5] We therefore conclude that the origin and character of her constructive trust claim was the recovery of lost income, and any resulting expenses are deductible under section 212(1) as expenses paid or incurred for the production or collection of income. The Nonconstructive Trust Claims
1. Removal of the Trustee. The parties do not dispute that petitioner's claim involving the removal of the trustee for allegedly breaching his fiduciary duty grew out of petitioner's concern for preserving the trust assets. There is also no dispute that the trust assets consisted of property held for the production of income. In fact, petitioner's allegations in the trust suit pertained primarily to the *447 self-dealing of the trustee and the improper manner in which the trust assets were invested. Therefore, the expenses attributable to removing William Barr as trustee are deductible under section 212(2). See Burch v. United States, 698 F.2d 575, 579 (2d Cir. 1983) (taxpayer allowed deduction for legal fees incurred to protect income-producing property from excessive management fees); Hendrick v. Commissioner, 35 T.C. 1223, 1234-1235 (1961) (legal fees paid by remainderman of a trust to maintain surveillance over management of trust corpus held deductible); Tyler v. Commissioner, 6 T.C. 135 (1946) (legal fees deductible for management or conservation of income-producing property where taxpayer, an income beneficiary of a testamentary trust, sought construction of a will to determine the amount of income payable to him under the trust). 2. Remaining Nonconstructive Trust Claims. As we stated above, respondent argues that the foundation of the trust litigation, including the first cause of action, pertaining to the sale of the Bannockburn partnership interest, and the fourth cause of action, pertaining to the loss caused petitioner *448 by the conspiracy between the trustee and Pesman, was petitioner's attempt to recover her share of the trust corpus. Respondent relies on the fact that petitioner settled the suit for her share of the trust corpus and that petitioner did not report the settlement amount as income. Therefore, respondent characterizes the litigation expenses as capital expenditures. We disagree with this characterization. We find that petitioner was attempting to recover trust property and taxable income lost as a result of the purported self-dealing by the trustee and Pesman. [6] However, contrary to what respondent seems to argue, this aspect of the trust litigation did not arise from or relate to the acquisition of title or any dispute or claim concerning title to the trust property. Nor was petitioner attempting to protect, establish or broaden her rights to the trust property. These claims were not made by petitioner in an effort to establish or assert her right to any property that otherwise would not be recognized. Compare Estate of Davis v. Commissioner, 79 T.C. 503, 508-509 (1982). Petitioner was entitled to half the trust assets on January 6, 1978, the day her mother died. *449 Petitioner's rights to the trust assets were therefore fixed well before the commencement of the trust litigation, and no evidence was presented that there was ever any dispute over petitioner's property rights under the Trust Agreements. In fact, the compromise agreement clearly recognized petitioner's rights to the trust assets. Analogously, in Cruttenden v. Commissioner, 70 T.C. 191, 201 (1978), affd. 644 F.2d 1368 (9th Cir. 1981), the taxpayer incurred legal expenses *450 for the recovery of certain corporate stock lent to a third party. Respondent argued that these expenses were not deductible under section 212(2) because they related to the acquisition of and title to the property. We found that the taxpayer's right to the property was fixed and not in dispute in the controversy; therefore, the legal expenses paid by the taxpayer in no manner related to the title of the securities. See also Cruttenden v. Commissioner, 70 T.C. at 204-205 (Sterrett, J., concurring); Matthews v. United States, 425 F.2d 738 (Ct. Cl. 1970); Fletcher v. Commissioner, a Memorandum Opinion of this Court dated August 28, 1951. Likewise, we find that the origin of the litigation did not relate to the defense, perfection or acquisition of title. Nor were the litigation expenses paid or incurred in protecting, establishing or asserting petitioner's rights to the trust assets; petitioner's rights to the property were fixed and recognized. Finding that the origin of the claims did not pertain to the acquisition of property or title to property does not end our inquiry. The issue of primary contention between the parties, which we *451 must now decide, is whether the claims relating to the recovery of petitioner's share of the trust assets, including the trust assets and profits lost as a result of self-dealing and mismanagement, are rooted in the management, conservation or maintenance of property held for the production of income, or in the production or collection of income. Sec. 212. We find in the affirmative. In the context of section 212(2), the term "conservation of property" seems "to refer to operations performed with respect to the property itself, such as safeguarding or upkeep." United States v. Gilmore, supra at 44. The term connotes the idea of preserving property in which the taxpayer has an interest. In Cruttenden v. Commissioner, 70 T.C. at 202, we held that although an expense paid or incurred for the acquisition of property is ordinarily not deductible and must be added to the cost of the property acquired, by contrast "the parenthetical portion of section 1.212-1(k), Income Tax Regs., * * * allows a deduction for expenses paid or incurred for the recovery of investment property [in that case securities] which by its very nature is held for the production *452 of income." We reasoned that the recovery of the securities allowed the taxpayer to "manage, conserve, and maintain" the property. As was the case with the taxpayer in Cruttenden, by recovering her portion of the trust assets from William Barr and Pesman, petitioner was able to put an end to the perceived mismanagement and unseemly investment of the trust assets and in turn "manage, conserve, and maintain" the property herself. The crux of the trust litigation was an attempt to put petitioner's share of the trust property in more reliable and safer hands -- her own. See also Fletcher v. Commissioner, supra; Matthews v. United States, supra.Thus, expenses attributable to recovering petitioner's share of the trust assets are deductible under section 212(2) and section 1.212-1(k), Income Tax Regs.
Furthermore, as evident from petitioner's request for damages and the allegations in the complaints that the trust assets were improperly invested at a low rate of return, petitioner attempted to recover taxable income lost as a result of the trustee's purported misconduct. Expenses paid or incurred for the recovery of taxable income are deductible. Sec. *453 212(1); Sec. 1.212-1(k), Income Tax Regs. See also Church v. Commissioner, 80 T.C. 1104 (1983). Moreover, petitioner sought an award of punitive damages. Because punitive damages are taxable income (absent a specific exclusion), litigation expenses paid or incurred to procure such damages are deductible under section 212 as expenses paid or incurred for the production of income. Church v. Commissioner, supra.Thus, petitioner's expenses attributable to these claims are deductible under section 212. Respondent further argues that any expenses allocable to the recovery of the piano and diamond ring are not deductible because petitioner presented no evidence that these items were "held for the production of income." The record, however, does not contain any evidence that petitioner was attempting to recover the piano and diamond ring. That was not part of the relief requested in the complaints or a concern in the settlement agreement. We find that petitioner's allegation that William Barr misappropriated this property was intended to provide further support for the claim that William Barr breached his fiduciary duty. Therefore, we hold that *454 no part of petitioner's expenses related to a recovery of the piano and ring. Accordingly, petitioner's litigation expenses, including attorneys' fees, are deductible under section 212. To reflect the foregoing and concessions of the parties, Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect for the year at issue. All rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The Trusts had special provisions for beneficiaries who had not yet attained the age of 30 years when distributions were required to be made. Petitioner was older than this minimum age during the relevant periods.↩
3. Although the retainer agreement refers to a $ 6,000 amount, the settlement sheet, itemizing the receipt and distribution of funds by Mr. Friedman, indicates that a $ 6,500 retainer was paid by and credited to petitioner. This difference does not affect the outcome of this case.↩
4. The Supreme Court in Woodward v. Commissioner, 397 U.S. 572, 577-578↩ (1970), left open the possibility that a subjective test involving the taxpayer's "primary purpose" in incurring the litigation expenses may be proper when the litigation "may affect a taxpayer's title to property more or less indirectly, and that thus calls for a judgment whether the taxpayer can fairly be said to be 'defending or perfecting title.'"
5. Moreover, as we will discuss below, expenses relating to petitioner's attempt to acquire trust corpus are deductible under sec. 212↩.(2) for the management, conservation or maintenance of property held for the production of income.
6. To some extent, petitioner attempted to recover her loss of income and assets by an award of damages. However, the parties have not contended that for purposes of sec. 212(2) a distinction exists between the damages requested and what the damages were intended to represent. We therefore decline to address this matter at this time. Moreover, merely because petitioner characterized the settlement amount as something other than income for tax purposes does not necessarily mean that that characterization is totally correct. However, since respondent does not contend that any part of the settlement amount should have been included in income, that issue is not before the Court.↩